**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | |
|---|---|
| ERIN BUZAN, MELISSA DOWNEY-GREENE, KENNETH MORRIS, and STACY TAGGART <br><br> Plaintiffs, <br><br> v. <br><br> KOHL'S CORPORATION <br><br> Defendant. | Case No. 1:16-cv-00180 <br><br> **PLAINTIFFS' ORIGINAL COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

ERIN BURZAN, MELISSA DOWNEY-GREENE, KENNETH MORRIS and STACY TAGGART ("Plaintiffs") bring this action against Defendant KOLH'S CORPORATION ("Defendant") to stop Defendant's practice of making illegal debt collection calls to the telephones of Plaintiffs, and to obtain redress for injuries caused by Defendant's conduct.  Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### INTRODUCTION

1.      "The right to be let alone is indeed the beginning of all freedom."[1]  Plaintiffs bring this action pursuant to the TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 (the "TCPA"), and the FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692, *et seq.*("FDCPA").

2.      Defendant engages in reckless and aggressive debt collection practices which outright ignore controlling federal law, and the rights of the called parties.

---

[1] William O. Douglas, *Public Utilities Commission v. Pollak*, 343 U.S. 451, 467 (1952)

3.      Defendant made unsolicited calls to Plaintiffs' cellular telephone in violation of the TCPA by using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of bullying Plaintiffs into paying an allegedly deficient balance that Plaintiff Morris does not even owe.  Thus, Defendant continuously called the wrong party.  Furthermore, Defendant called all Plaintiffs after they stated they did not wish to be called again.  Defendant should have placed each name on its federally mandated Internal Do-Not-Call List, but failed to do so. Defendant's repeated calls to Plaintiffs Buzan, Downey-Greene, and Taggart also violate the FDCPA, which is a statute Congress passed to prevent harassing, unconscionable, and unfair debt collection practices.  Accordingly, Plaintiffs are entitled to recover statutory damages, actual damages, attorneys' fees, and treble damages for each and every such violation.

## PARTIES

4.      Plaintiff ERIN BUZAN is a natural person and citizen of Waco, Texas.

5.      Plaintiff MELISSA DOWNEY-GREENE is a natural person and citizen of Mansfield, Texas.

6.      Plaintiff KENNETH MORRIS is a natural person and citizen of Beaumont, Texas.

7.      Plaintiff STACY TAGGART is a natural person and citizen of Coatesville, PA.

8.      Defendant KOHL'S CORPORATION is a corporation organized under the laws of the State of Wisconsin.  Defendant maintains its principal office in Menomonee Falls, Wisconsin, and may be served with process by serving its registered agent, Corporate Creations Network, Inc., 4650 W. Spencer Street, Appleton, WI, 54914.

9.      Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was

committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.  Furthermore, the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice. For these same reasons, venue is proper in this District.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

12.     Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent.  If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[2]  Calls that include non-marketing messages require consent, but not

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice,

written consent.  The TCPA grants consumers a private right of action, with a provision for $500

or the actual monetary loss in damages for each violation, whichever is greater, and treble damages

for each willful or knowing violation, as well as injunctive relief.

13.     Since the TCPA's passage in 1991, the FCC has taken multiple actions

implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying

specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the

"Order") provided further protection to consumers by, among other things, clarifying that ATDS

is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned

number, and clarifying consumers may revoke consent through reasonable methods.  *In the Matter*

*of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30

F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-

declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has

the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer

is not limited to its current configuration but also includes its potential functionalities."  The Order

clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to

serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using

those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW,

2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

14.     The Order also states that calls placed to the wrong number or a reassigned number

are made with knowledge of the error after the first call; and consumers may revoke consent

through any reasonable method, including orally: "[w]e clarify, however, that callers who make

---

and the telephone number to which the signatory authorizes such advertisements or telemarketing
messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

15.    Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC").  See 47 C.F.R. § 64.1200(d).  The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]."  *Id*.  The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry.  *Id*. at § 64.1200(d)(3), (6).  Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA.  The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

16.    Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

17.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

**The FDCPA**

18.     In 1978, Congress enacted the FDCPA in response to data showing that abusive collection practices lead to an increase in personal bankruptcy filings, marital instability, loss of employment, and invasion of personal privacy.  The FDCPA prohibits false, deceptive, misleading, harassing, abusive and offensive conduct during collection of consumer debts. *See* 15 U.S.C. § 1692a, *et seq.* In particular, the FDCPA prohibits, *inter alia*, the following practices:

- Discussing debt with a third party.  15 U.S.C. § 1692b(2)

- Contacting a third party more than one time for the purpose of obtaining debtor's location information.  15 U.S.C. § 1692d(1)

- Calling debtor's workplace if debtor notified debt collector that such calls are unwanted.  15 U.S.C. § 1692c(a)(3)

- Calling debtor before the hours of 8 a.m. or 9 p.m. 15 U.S.C. § 1692c(a)(1)

- The collector from threatening violence or the use of criminal activity towards the consumer or property.  15 U.S.C. § 1692d(1)

- The collector from using obscene or profane language.  15 U.S.C. § 1692d(2)

- The collector from engaging in harassing, abusive and/or oppressive conduct.  15 U.S.C. § 1692d

- The collector from making false, deceptive, or misleading statements.  15 U.S.C. § 1692e, e(10)

- The collector from stating or implying that non-payment will result in arrest or criminal prosecution.  15 U.S.C. § 1692e(4)

- The collector from threatening suit, garnishment, or seizure of property without the legal ability to do the same.  15 U.S.C. § 1692e(5)

- The collector from failing to identify itself and the purpose of the call.  15 U.S.C. § 1692e(11)

19.     The FDCPA further expressly provides a private right of action to anyone who receives prohibited collection calls.  A prevailing plaintiff under the FDCPA is entitled to recovery of actual damages (including mental anguish), a statutory penalty of $1,000, plus costs and attorneys' fees. 15 U.S.C. § 1692k(a).

### FACTS SPECIFIC TO PLAINTIFF ERIN BUZAN

20.     Beginning around March 2014, Buzan began to receive calls from several different numbers beginning with area codes 903, 414, and 262.  The numbers are associated with Defendant. Since that time, Buzan has received at least 249 calls from Defendant.

21.     Buzan received all calls described above on her cellular telephone assigned a number ending in 5057.

22.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

23.     When Buzan answered the calls, she experienced a pause on the other end of the line before Defendant's live representative engaged her.  Buzan could often hear the sound of a call center in the background.

24.     The purpose of Defendant's calls was to collect a past due debt.

25.     Defendant's representatives' behavior was harassing and abusive.     Buzan demanded Defendant stop calling her cell phone.

26.     Buzan used to work as a collection agent, so Buzan knew what she needed to say to prevent Defendant from calling her again.  Buzan instructed Defendant not to call her, but Defendant continued to call incessantly.

27.     Buzan felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  The calls occupied her cell phone line, used minutes on her cell phone, took up space on her voicemail, and caused her to lose time at work.  Defendant ignored Buzan's requests to further its own agenda: threaten and harass Plaintiff until she agreed to pay an alleged deficient balance.

28.     Defendant's repeated calls made by Defendant caused Buzan severe mental anguish.

29.     Based on the circumstances of the calls – including, but not limited to, the multiple calls, call center chatter, Buzan was not immediately engaged by a live person ("dead air") – Buzan believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

30.     On information and belief, Defendant's ATDS called Buzan on every occasion.

31.     The telephone number Defendant called was assigned to a cellular telephone service for which she loses minutes she paid for pursuant to 47 U.S.C. § 227(b)(1).

32.     Buzan is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 5057.

33.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

34.     Buzan clearly and unequivocally withdrew any consent she may have provided Defendant to call her on her cellular telephone.

35.     Buzan is a consumer who purchased services from Defendant.  Accordingly, the debt allegedly owed to Defendant is a consumer debt.

36.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

37.     All calls Defendant made to Buzan violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

**FACTS SPECIFIC TO PLAINTIFF MELISSA DOWNEY-GREENE**

38.     Beginning around May 2015, Downey-Greene began to receive calls from several different numbers beginning with area codes 903, 414, and 262.  The numbers are associated with Defendant. Since that time, Downey-Greene has received at least 286 calls from Defendant.

39.     Downey-Greene received all calls described above on her cellular telephone assigned a number ending in 4934.

40.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

41.     When Downey-Greene answered the calls, she experienced a brief pause on the other end of the line before Defendant's representative started speaking.  Downey-Greene heard other people talking – like a call center – as the representative spoke.

42.     The purpose of Defendant's calls was to collect a past due debt.

43.     Defendant's representatives' behavior was rude and threatening.  Downey-Greene demanded Defendant stop calling her cell phone.

44.     Downey-Greene explained repeatedly that her husband was diagnosed with cancer, and they were not in a position to pay at that time.  Downey-Greene told Defendant to "please stop calling her" on numerous occasions.

45.     Downey-Greene felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  The calls occupied her cell phone line, used minutes on her cell phone, took up space on her voicemail, and caused her to lose time at work.  Defendant ignored Downey-Greene's requests to further its own agenda: threaten and harass Plaintiff until she agreed to pay an alleged deficient balance.

46.     Defendant's repeated calls made by Defendant caused Downey-Greene severe mental anguish.

47.     Based on the circumstances of the calls – including, but not limited to, the multiple calls, call center chatter, Downey-Greene was not immediately engaged by a live person ("dead air") – Downey-Greene believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

48.     On information and belief, Defendant's ATDS called Downey-Greene on every occasion.

49.     The telephone number Defendant called was assigned to a cellular telephone service for which she loses minutes she paid for pursuant to 47 U.S.C. § 227(b)(1).

50.     Downey-Greene is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 4934.

51.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

52.     Downey-Greene clearly and unequivocally withdrew any consent she may have provided Defendant to call her on her cellular telephone.

53.     Downey-Greene is a consumer who purchased services from Defendant. Accordingly, the debt allegedly owed to Defendant is a consumer debt.

54.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

55.     All calls Defendant made to Downey-Greene violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

### FACTS SPECIFIC TO PLAINTIFF KENNETH MORRIS

56.     Beginning around July 2015, Morris began to receive calls from the number 414-257-2339, which is associated with Defendant. Since that time, Morris has received at least 119 calls from Defendant.

57.     Morris received all calls described above on his cellular telephone assigned a number ending in 0848.

58.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Morris's prior express written consent.

59.     When Morris answered the calls, there was a short pause before a pre-recorded message began to play on the other end of the line.

60.     The pre-recorded message promoted Defendant's products.  Morris sometimes received 10 calls per day, as if Defendant's dialing system was out of control.

61.     Morris wanted to tell Defendant to stop calling, but there was no obvious way to opt out of the calls or speak with one of Defendant's representatives.

62.     Morris never provided Defendant consent to call him for any purpose.

63.     At the time of the calls, Morris did not have a business relationship with Defendant.

64.     Morris felt the calls were an invasion of his privacy and wanted Defendant to stop calling. The calls occupied his cell phone line, used minutes on his cell phone, and took up space on his voicemail. Morris paid good and valuable consideration for full use and enjoyment of his cellular phone.

65.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, pre-recorded voice), Morris believed Defendant called his cellular telephone using an ATDS that mechanically selected his number from a computer database.

66.     On information and belief, Defendant's ATDS called Morris on every occasion.

67.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

68.     Morris is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 0848.

69.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

70.     Morris did not provide Defendant with prior express written consent to place calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

71.     All calls Defendant made to Morris violate 47 U.S.C. § 227(b)(1).

## FACTS SPECIFIC TO PLAINTIFF STACY TAGGART

72.     Beginning around September 2015, Taggart began to receive calls from several different numbers beginning with area codes 903, 414, and 262.  The numbers are associated with Defendant. Since that time, Taggart has received at least 206 calls from Defendant.

73.     Taggart received all calls described above on her cellular telephone assigned a number ending in 1159.

74.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

75.     When Taggart answered the calls, she experienced a pause on the other end of the line before Defendant's representative started speaking.

76.     The purpose of Defendant's calls was to collect a past due debt.

77.     Defendant's representative was rude and aggressive.  Taggart demanded Defendant stop calling her cell phone.

78.     Defendant continued to call Taggart over her protests, and even called her before or after FDCPA curfew limits on at least nine occasions.

79.     Taggart felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  The calls occupied her cell phone line, used minutes on her cell phone, and took up space on her voicemail.

80.     Defendant's repeated calls made by Defendant caused Taggart severe mental anguish.

81.     Based on the circumstances of the calls – including, but not limited to, the multiple calls, Taggart was not immediately engaged by a live person ("dead air") – Taggart believed

13

Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

82.     On information and belief, Defendant's ATDS called Taggart on every occasion.

83.     The telephone number Defendant called was assigned to a cellular telephone service under which she loses minutes she paid for pursuant to 47 U.S.C. § 227(b)(1).

84.     Taggart is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 1159.

85.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

86.     Taggart clearly and unequivocally withdrew any consent she may have provided Defendant to call her on her cellular telephone.

87.     Taggart is a consumer who purchased services from Defendant.  Accordingly, the debt allegedly owed to Defendant is a consumer debt.

88.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

89.     All calls Defendant made to Taggart violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

**FIRST CAUSE OF ACTION**
**ALL PLAINTIFFS**
(VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,
47 U.S.C. § 227, *ET SEQ.*)

90.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

91.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

14

92.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

93.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### SECOND CAUSE OF ACTION
### ALL PLAINTIFFS
(KNOWING AND/OR WILLFUL VIOLATION OF
THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

94.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

95.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

96.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

97.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### THIRD CAUSE OF ACTION
### PLAINTIFFS BUZAN, DOWNEY-GREENE, TAGGART
(VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *ET SEQ.*)

98.     Plaintiffs hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

99.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above cited

provisions of 15 U.S.C. § 1692d(2), 15 U.S.C. § 1692d, and 15 U.S.C. § 1692e(5).

100.    As a result of Defendant's violations of the FDCPA, Plaintiffs are entitled to an award of $1,000.00 in statutory damages, for each and every violation, and actual damages, including mental anguish.

## ATTORNEY'S FEES

101.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

102.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

## JURY DEMAND

103.    Plaintiffs demand a jury trial on all issues triable to a jury.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for relief as follows:

- An award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227, *et seq*.;

- An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, *et seq*.;

- An award of $1,000.00 in statutory damages, for each and every violation, pursuant to 15 U.S.C. § 1692, *et seq*.;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones, and enjoining Defendant from

engaging in abusive and oppressive collection practices as outlined in this Complaint.

- Attorneys' fees, costs and any and all other relief deemed just and proper.

Dated: June 1, 2016                                    Respectfully Submitted,

                                                       _____*/s/ W. Craft Hughes*_____
                                                       W. Craft Hughes—craft@hughesellzey.com
                                                       Texas Bar No. 24046123
                                                       Jarrett L. Ellzey—jarrett@hughesellzey.com
                                                       Texas Bar No. 24040864
                                                       HUGHES ELLZEY, LLP
                                                       2700 Post Oak Blvd., Ste. 1120
                                                       Galleria Tower I
                                                       Houston, TX 77056
                                                       Phone: (713) 554-2377
                                                       Fax: (888) 995-3335

                                                       Bryant Fitts
                                                       Texas Bar No. 24040904
                                                       bfitts@fittslawfirm.com
                                                       **FITTS LAW FIRM, PLLC**
                                                       2700 Post Oak Blvd., Suite 1120
                                                       Houston, Texas 77056
                                                       Phone (713) 871-1670
                                                       Fax (713) 583-1492

                                                       **ATTORNEYS FOR PLAINTIFF**